**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| CHRISTOPHER CHAMBERS,<br><br>Plaintiff,<br><br>v.<br><br>MONICA G. TIBBITS-NUTT, individually, and PHILLIP ENG, in his official capacity as Interim Transportation Secretary,[1]<br><br>Defendants. | ) | No. 1:25-cv-10699-JEK |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**KOBICK, J.**

Plaintiff Christopher Chambers worked as an engineer at the Massachusetts Department of Transportation ("MassDOT") until April 2022, when he lost his job for refusing on religious grounds to be vaccinated against COVID-19, as required by MassDOT's vaccination policy. The amended complaint alleges that he was wrongfully terminated in violation of his First Amendment free exercise rights, M.G.L c. 151B, and Title VII, 42 U.S.C. § 2000e-2(a). That pleading names Monica Tibbits-Nutt, individually and in her official capacity as the Secretary of Transportation, as the only defendant. But because Phillip Eng has since been appointed to that role, he is automatically substituted for Tibbits-Nutt pursuant to Federal Rule of Civil Procedure 25(d) with respect to the official capacity claims, and the Court construes the operative complaint as against two defendants: Tibbits-Nutt, in her individual capacity, and Eng, in his official capacity.

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Phillip Eng, is added as a defendant in this action in his official capacity as the current Interim Secretary of the Massachusetts Department of Transportation.

Pending before the Court is the defendants' motion to dismiss the amended complaint. That motion will be granted. The Title VII claim is untimely because Chambers did not file this lawsuit within the requisite ninety days of receiving his right-to-sue letter from the U.S. Equal Employment Opportunity Commission. Chambers cannot assert a Chapter 151B claim against Tibbits-Nutt, because his underlying administrative complaint failed to name her, or against Eng, because the Eleventh Amendment affords him immunity from suit in federal court on that claim. The First Amendment claim also fails against Eng, because 42 U.S.C. § 1983 does not permit such an official-capacity claim for damages, and against Tibbits-Nutt, because Chambers does not allege a plausible individual-capacity claim against her.

## BACKGROUND

The following facts are recounted based on the allegations in the amended complaint and documents subject to judicial notice or sufficiently referenced in, or attached to, that pleading.

Chambers worked as a full-time Civil Engineer at MassDOT from December 2002 to April 2022. ECF 11, ¶ 3. On August 19, 2021, then-Governor Charlie Baker issued Executive Order 595, which required employees of executive departments to prove that they received a COVID-19 vaccination. ECF 11-2. As a result, MassDOT mandated that its employees, as a condition of employment, provide such proof by October 17, 2021. ECF 11, ¶¶ 12, 15; ECF 11-2. Employees who did not comply with this policy were subject to discipline, including termination. ECF 11-2. As part of its mandatory COVID-19 vaccination policy, MassDOT permitted its employees to request a religious exemption. *See* ECF 11-1; ECF 11, ¶¶ 2, 16.

Chambers submitted a religious exemption request on October 5, 2021. ECF 11, ¶ 16; ECF 11-1. In his request, Chambers identified himself as a Christian and stated that he had "prayed on this daily sometimes many times each day and the answer [was] always the same and at this time

[he could] not and [he would] leave it to God." ECF 11-1, at 2; *see* ECF 11, ¶ 17. MassDOT denied his request, and Chambers appealed. ECF 11, ¶ 18; *see* ECF 11-1. In his appeal, Chambers stated:

> I pray daily, sometimes many times a day and even more so now during these trying times. During this time when I speak with God, he and I cover many topics and as a result of those prayers he guides and gives "me" direction. I say "me" since we are all god['s] children and we are all created equally but also uniquely under god[']s eye and he treats us as such, as "individuals" ! and as an individual, we all have different needs and paths we must follow and when we listen he will guide us all as he does "me". Now the results may be different because God's children all have different needs and paths to walk, but that is between only you and God. In this, he has set my path and given me direction that I shall follow, as the Lord and only the Lord is my shepherd.

ECF 11-1, at 4; *see* ECF 11, ¶ 19. MassDOT denied the appeal in November 2021. ECF 11, ¶ 18.

In December 2021, due to his continued failure to comply with MassDOT's vaccine mandate, Chambers was placed on administrative leave. *Id.* ¶ 21. He was also granted a temporary medical exemption to the mandate under the Americans with Disabilities Act. *Id.* ¶ 22. After that exemption expired on March 15, 2022, Chambers received a termination letter on April 2, 2022, stating that he had been fired effective March 31, 2022. *Id.* ¶¶ 5, 22, 24; *see* ECF 11-2.

On February 10, 2022, Chambers filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") and the U.S. Equal Employment Opportunity Commission ("EEOC"). ECF 16-2; *see* ECF 11, ¶ 26. He claimed that MassDOT's denial of his religious exemption request and subsequent termination of his employment violated state and federal law. ECF 16-2, at 2. The EEOC issued Chambers a "Determination and Notice of Rights" on August 31, 2022, stating that it would not proceed with the charge and informing him of his right to sue within ninety days of receipt of the notice. ECF 16-1 (emphasis omitted).[2]

---

[2] The EEOC's right-to-sue letter is attached as an exhibit to the defendants' motion to dismiss and was not referenced in Chambers' amended complaint. But the parties do not dispute its authenticity, nor do they contest that the letter is subject to judicial notice as a public record on a

Chambers initiated this action on March 26, 2025 and filed an amended complaint on August 4, 2025. ECF 1, 11. Against Tibbits-Nutt, individually, and Eng, in his official capacity as the Interim Secretary of Transportation, Chambers asserts claims for a First Amendment violation under 42 U.S.C. § 1983 (Count I) and religious discrimination under M.G.L c. 151B, § 4, and Title VII, 42 U.S.C. § 2000e-2(a) (Count II). ECF 11, ¶¶ 4, 27-37.[3] While Tibbits-Nutt was not serving as Secretary of Transportation during the complained-of events, Chambers alleges that she is nonetheless personally liable for the wrongful conduct. *Id.* ¶ 4. As relief, the amended complaint seeks $2 million in compensatory damages and $1 million in punitive damages. *Id.* at 8. The defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF 15. The Court held a hearing and took the motion under advisement. ECF 22.

**STANDARDS OF REVIEW**

In evaluating a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quotation marks omitted). When ruling on such a motion, the Court must credit the "plaintiff's well-pled factual allegations and dra[w] all reasonable inferences in the plaintiff's favor." *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 13 (1st Cir. 2023) (quotation marks omitted).

---

motion to dismiss. The Court will therefore consider the EEOC's letter in evaluating the defendants' motion to dismiss. *See Freeman v. Town of Hudson*, 714 F.3d 29, 36 (1st Cir. 2013) (a court may consider public records that would otherwise be subject to judicial notice under Fed. R. Evid. 201 when evaluating a motion to dismiss); *Louissaint v. Collins*, 795 F. Supp. 3d 288, 295 n.2 (D. Mass. 2025) (considering an EEOC right-to-sue letter in ruling on a motion to dismiss).

[3] The amended complaint in fact asserts a claim under M.G.L. c. 151 rather than M.G.L. c. 151B. ECF 11, ¶ 35 & at 7. But, as Chambers argued at the hearing, he intended to assert a claim under Chapter 151B, and the Court will construe Count II accordingly. *See id.* ¶¶ 1, 6.

In assessing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintif[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. The Court "may properly consider only facts and documents that are part of or incorporated into the complaint." *Rivera v. Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009) (quotation marks omitted).

## DISCUSSION

### I. Title VII Claim.

The Court begins with Count II, which alleges that the defendants discriminated against Chambers based on his religion, in violation of Title VII, 42 U.S.C. § 2000e-2(a). Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). To assert a Title VII claim in this Court, a plaintiff must file an administrative complaint with the EEOC and bring a lawsuit within ninety days of receiving a right-to-sue notice from the EEOC. *García-Gesualdo v. Honeywell Aerospace of Puerto Rico, Inc.*, 135 F.4th 10, 16 (1st Cir. 2025); *see* 42 U.S.C. § 2000e-5(f)(1). Such a notice "is deemed to have been placed in the mail on the date shown on the notice

and received within a reasonable time thereafter," which "may encompass anything from three to five days." *Loubriel v. Fondo del Seguro del Estado*, 694 F.3d 139, 143 (1st Cir. 2012).

The defendants argue that the Title VII claim is untimely because Chambers failed to file this lawsuit within the requisite ninety days. The notice states that it was "Issued On: 08/31/2022" and that Chambers' "lawsuit must be filed WITHIN 90 DAYS of [his] receipt of this notice." ECF 16-1, at 2 (bold omitted). In his opposition, Chambers does not contest the consideration of that notice at the motion to dismiss stage or address the timeliness of his Title VII claim. *See supra*, note 2; *Premca Extra Income Fund LP v. Angle*, 178 F.4th 712, 718 (1st Cir. 2026) (permitting courts to consider "documents the authenticity of which are not disputed by the parties" and "official public records" at this stage (quotation marks omitted)). The Court therefore presumes that Chambers received this notice within five days of August 31, 2022—by September 5, 2022—and thus had ninety days—until December 4, 2022—to file an action asserting a Title VII claim. *See Loubriel*, 694 F.3d at 143-44. Because this lawsuit was not filed until March 26, 2025, over two years later, Chambers' Title VII claim is time-barred and must be dismissed. *See García-Gesualdo*, 135 F.4th at 16.

## II. <u>Chapter 151B Claim.</u>

Count II also alleges that the defendants violated Chapter 151B by discriminating against Chambers based on his religion. Chapter 151B makes it unlawful to discriminate against individuals for their sincerely held religious beliefs. M.G.L. c. 151B, § 4(1A). Like with Title VII, to assert a claim under Chapter 151B, a plaintiff must first file an administrative complaint with the MCAD within 300 days of the complained-of conduct. *Dunn v. Langevin*, 492 Mass. 374, 377 (2023) (citing M.G.L. c. 151B, §§ 5-6, 9). That complaint affords the MCAD "'an opportunity to investigate and conciliate the claim of discrimination'" and "'provide[s] notice to the defendant of

potential liability.'" *Id.* (quoting *Everett v. 357 Corp.*, 453 Mass. 585, 600 (2009)). "The failure to name a party in the complaint filed with the MCAD has been ruled to bar a plaintiff from later maintaining a G.L. c. 151B claim in court against the party." *King v. First*, 46 Mass. App. Ct. 372, 373-74 (1999) (citing *Powers v. H.B. Smith Co.*, 42 Mass. App. Ct. 657, 667 (1997)).

Tibbits-Nutt contends that the Chapter 151B claim, asserted against her in her individual capacity, fails because she was not named in Chambers' February 10, 2022 MCAD complaint. That complaint, incorporated by reference into the amended complaint, names MassDOT as the offending party. ECF 16-2, at 2; *see* ECF 11, ¶ 26. The charge does not identify or name any individual at MassDOT, let alone Tibbits-Nutt, who was not even the Secretary of Transportation when Chambers was terminated from MassDOT. ECF 11, ¶ 4. While "there may be an exception where a plaintiff filed an MCAD complaint against another party and the unnamed party had notice and opportunity to participate in the proceedings," Chambers must "claim and set forth facts to justify an exception to the rule." *Butner v. Dep't of State Police*, 60 Mass. App. Ct. 461, 468 n.14 (2004); *see King*, 46 Mass. App. Ct. at 374-75 (discussing potentially applicable exceptions). Neither his amended complaint nor his opposition does so. Chambers' failure to name Tibbits-Nutt in his MCAD complaint thus bars him from asserting a Chapter 151B claim against her. *See Butner*, 60 Mass. App. Ct. at 468 ("[E]ven if the plaintiffs timely filed MCAD complaints against the department . . . , they cannot maintain a civil action against any defendant not named in the MCAD complaint."); *Powers*, 42 Mass. App. Ct. at 667 ("[S]ince the plaintiff did not name Mestek in his MCAD complaint, his claim against Mestek was barred."); *accord Karimpour v. Stanley Black & Decker, Inc.*, No. 21-cv-11498-NMG, 2022 WL 1322566, at *4 (D. Mass. May 2, 2022); *Rochat v. L.E.K. Consulting, LLC*, 83 Mass. App. Ct. 1108 (2013) (Rule 1:28 decision); *Kahyaoglu v. Caritas Carney Hosp.*, 84 Mass. App. Ct. 1107 (2013) (Rule 1:28 decision).

For his part, Eng argues that the Court must dismiss the Chapter 151B claim against him in his official capacity because the claim is barred by the Eleventh Amendment. That Amendment provides States with immunity from suit in federal court unless the State has waived its immunity by consenting to be sued or Congress has expressly abrogated that immunity. *See Maysonet-Robles v. Cabrero*, 323 F.3d 43, 48-49 (1st Cir. 2003). Such immunity extends to "suits against state agencies and departments" and those "nominally against state officials." *Cotto v. Campbell*, 126 F.4th 761, 767 (1st Cir. 2025); *see* ECF 11, ¶ 4 (identifying MassDOT as "an agency of the Commonwealth of Massachusetts" and Tibbits-Nutt as its "[then-]current Secretary and CEO"). Chambers does not invoke either exception or explain why such immunity is inapplicable to Eng in his official capacity. *See* ECF 17, at 9 (discussing only the "individual capacity" claim); *Murphy v. Massachusetts - Exec. Off. of Trial Ct.*, 335 F. Supp. 3d 137, 144-45 (D. Mass. 2018) (holding that neither exception applies to Chapter 151B claims against the Commonwealth and collecting similar cases). As the First Circuit has observed, "the Eleventh Amendment clearly bars . . . a [Chapter 151B] claim in federal court against the state defendants." *Lopez v. Massachusetts*, 588 F.3d 69, 73 n.1 (1st Cir. 2009) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984)); *accord Nordberg v. Massachusetts Teachers' Ret. Sys.*, No. 19-cv-40089-TSH, 2020 WL 7974329, at *2 (D. Mass. Nov. 30, 2020), *aff'd*, No. 21-1006, 2021 WL 6334932 (1st Cir. Oct. 20, 2021). Chambers' Chapter 151B claim against Eng in his official capacity will therefore be dismissed without prejudice.

## III. <u>Free Exercise Claim.</u>

Count I asserts, pursuant to 42 U.S.C. § 1983, that the defendants infringed Chambers' First Amendment rights by discriminating against him based upon his religion and by interfering with his right to freely practice his religion. ECF 11, ¶¶ 29, 32. The First Amendment's Free Exercise

Clause, which is incorporated against the States by the Fourteenth Amendment, "'protects religious observers against unequal treatment' and against 'laws that impose special disabilities on the basis of religious status.'" *Espinoza v. Montana Dep't of Revenue*, 591 U.S. 464, 475 (2020) (quoting *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 458, 461 (2017)). Chambers alleges that even though neither defendant was "the head of [Mass]DOT at the time [he] was terminated," Tibbits-Nutt, in her individual capacity, and Eng, in his official capacity, are liable "for his termination as the new CEO[s]" of the Department and "for failing to reinstate him." ECF 11, ¶ 4 & at 1.

Eng argues, and the Court agrees, that he cannot be sued in his official capacity for damages under Section 1983. That statute allows a plaintiff to bring a claim against any "*person* who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 175 (2023) (emphasis added) (quoting 42 U.S.C. § 1983). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). There is, accordingly, "no right of action under § 1983 [for damages] against the state itself or state officials sued in their official capacities." *Segrain v. Duffy*, 118 F.4th 45, 72 n.16 (1st Cir. 2024); *accord Nieves-Márquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003). Chambers' Section 1983 claim against Eng must therefore be dismissed.

For her part, Tibbits-Nutt contends that the Section 1983 claim against her in her individual capacity fails because the amended complaint lacks sufficient allegations that the denial of Chambers' religious exemption request pursuant to MassDOT's vaccination policy violated his free exercise rights. The Free Exercise Clause, once again, "'protects religious liberty against government interference.'" *Brox v. Woods Hole*, 164 F.4th 37, 42 (1st Cir. 2026) (quoting *Does 1-*

*6 v. Mills*, 16 F.4th 20, 29 (1st Cir. 2021)). A "religiously neutral and generally applicable" policy that "incidentally burdens free exercise rights" does not violate the First Amendment "if it is rationally related to a legitimate governmental interest." *Mills*, 16 F.4th at 29. A policy that is neither neutral nor generally applicable, however, "is subjected to strict scrutiny and must be 'justified by a compelling state interest and . . . narrowly tailored in pursuit of that interest.'" *Brox*, 164 F.4th at 42 (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 (2022)). To be neutral, the policy "may not single out religion or religious practices." *Mills*, 16 F.4th at 29. And to be generally applicable, the policy "may not selectively burden religiously motivated conduct while exempting comparable secularly motivated conduct." *Id.*

Chambers makes no argument that MassDOT's vaccination policy is not generally applicable.[4] *See Brox*, 164 F.4th at 43-44 (deeming individualized exemption argument as to general applicability waived where not raised in plaintiff's opening district court brief). He instead contests the policy's neutrality, contending in his brief that MassDOT "purposefully enacted its vaccine mandate to infringe upon or restrict the practices of its employees who objected to receiving the vaccine because of their religious beliefs." ECF 17, at 6. But this contention is not supported by allegations in the amended complaint. *See Kolackovsky v. Town of Rockport*, 165 F.4th 114, 120 (1st Cir. 2026) ("[B]riefs cannot fill the void left by the lack of adequate allegations in the complaint."). Indeed, Chambers' termination letter, which is attached to that complaint, states to the contrary—that "Governor Baker issued Executive Order 595 requiring all Executive

[4] At the motion hearing, Chambers invoked *O'Connell v. Newton Public Schools*, No. 25-cv-10192-AK, 2026 WL 184516 (D. Mass. Jan. 23, 2026). In *O'Connell*, the Court denied dismissal of the plaintiff's free exercise claim where it was "reasonable to infer the Vaccination Policy was not enforced with general applicability" in part because the complaint plausibly alleged that "religious exemptions were treated differently from medical exemptions." *Id.* at *4. That case is inapposite because the amended complaint here contains no such allegations, and Chambers does not dispute that MassDOT's vaccine mandate is generally applicable.

Department managers and employees to provide proof of COVID-19 vaccination . . . as a condition of continuing employment" in order "to promote and ensure the health and safety of Masschusetts workers and residents." ECF 11-2. Nor does the religious exemption request form, also attached to the amended complaint, plausibly suggest that the mandate "discriminate[s] against religious practices or beliefs on the basis of their religious nature." *Brox*, 164 F.4th at 43; *see* ECF 11-1; *Colón v. City of Bos.*, No. 24-cv-12191-DJC, 2026 WL 617337, at *11 (D. Mass. Mar. 5, 2026) (dismissing free exercise claim where plaintiff did not plausibly allege that defendant "administered its religious exemption policy in a way that burden[ed] some religions but not others"). It instead requires all applicants to "describe the religious principles that guide [their] objection to immunization" and "[i]ndicate how [their] sincerely held belief conflicts with the COVID-19 vaccine mandate." ECF 11-1, at 2.

Because Chambers fails to plausibly allege that MassDOT's vaccine mandate is not neutral or generally applicable, rational basis review applies. The mandate satisfies this standard. That is so because MassDOT "undoubtably had legitimate interests in preventing the spread of COVID-19 and in protecting the health and safety of its employees." *Brox*, 164 F.4th at 50; *see* ECF 11-2; *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest."); *Mills*, 16 F.4th at 32 ("Few interests are more compelling than protecting public health against a deadly virus."). And requiring vaccination for all MassDOT employees, while affording them the ability to apply for religious exemptions, was "rationally related to [this] legitimate governmental interest." *Mills*, 16 F.4th at 29. Accordingly, Chambers' free exercise claim must be dismissed. *See Colón*, 2026 WL 617337, at *11 (granting dismissal of free exercise claim where the disputed vaccination policy was "rationally related to the government interest of limiting exposure to COVID").

**CONCLUSION AND ORDER**

For the foregoing reasons, the defendants' motion to dismiss, ECF 15, is GRANTED. Chambers' Title VII and First Amendment claims are dismissed with prejudice. His Chapter 151B claim against Tibbits-Nutt in her individual capacity is dismissed with prejudice, and his Chapter 151B claim against Eng in his official capacity is dismissed without prejudice.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: August 18, 2026